UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES E. LUNDEEN, SR., M.D.,

      Plaintiff,                      Case No. 2:08-cv-1111
                                              JUDGE GREGORY L. FROST
      v.                                Magistrate Judge Terence P. Kemp

PATRICIA D. LAZICH, ET AL.,

      Defendants.

**OPINION AND ORDER**

In this civil rights action, Plaintiff, James E. Lundeen, Sr., M.D. ("Dr. Lundeen"), seeks injunctive relief and damages from Defendants, Assistant Ohio Attorney General Patricia D. Lazich ("Asst. A.G. Lazich") and the Honorable Patricia E. Morgenstern-Clarren ("Judge Morgenstern-Clarren"), judge of the United States Bankruptcy Court for the Northern District of Ohio. This matter is currently before the Court on Judge Morgenstern-Clarren's motion to dismiss (Doc. # 18), Dr. Lundeen's memorandum in opposition to the motion to dismiss (Doc. # 22), and Judge Morgenstern-Clarren's reply memorandum (Doc. # 23). For the reasons that follow, the Court **GRANTS** the motion to dismiss.

**I. Background**

Dr. Lundeen has participated in a series of cases before the United States Bankruptcy Court for the Northern District of Ohio, including the bankruptcy of James E. Lundeen, Sr., M.D., Inc. ("Debtor Entity"), a corporation that he controlled. *See In re James E. Lundeen, Sr., M.D., Inc.*, No. 07-19423 (Bankr. N.D. Ohio). In that case, the Debtor Entity's trustee initiated an adversary proceeding against Dr. Lundeen and the Ohio Bureau of Workers' Compensation

1

("BWC"). *See Helbling v. Ohio Bureau of Workers' Comp.*, No. 08-1165 (Bankr. N.D. Ohio). Along with her complaint, the trustee moved for both a temporary restraining order ("TRO") and a preliminary injunction to freeze any BWC accounts of entities associated with Dr. Lundeen. Judge Morgenstern-Clarren held a hearing on the TRO motion on June 17, 2008, where Asst. A.G. Lazich appeared on behalf of BWC and Dr. Lundeen failed to appear. At the hearing, Judge Morgenstern-Clarren granted the TRO, requiring BWC to freeze any funds owed to Lundeen Medical Group, Lundeen Therapy Pain Management, and Lundeen Physical Therapy Akron, Inc., as well as funds identified by Dr. Lundeen's personal social security number.

On June 27, 2008, Judge Morgenstern-Clarren vacated the TRO because Dr. Lundeen had not been properly served with notice of the TRO hearing. Judge Morgenstern-Clarren then set a preliminary injunction hearing for July 8, 2008. Despite her order vacating the TRO, BWC continued the freeze on the funds owed to the three entities as well as those identified by Dr. Lundeen's personal social security number.

Both Asst. A.G. Lazich and Dr. Lundeen appeared at the July 8, 2008, preliminary injunction hearing. In the week that followed, Dr. Lundeen attempted to contact Asst. A.G. Lazich multiple times to inquire about the hold on the funds in the absence of the TRO. On July 14, 2008, Judge Morgenstern-Clarren issued a preliminary injunction that granted in part and denied in part the trustee's motion to freeze all BWC accounts affiliated with Dr. Lundeen. The injunction ordered BWC to continue holding any funds owed to the three entities listed in the TRO, but it also stated that it was "not appropriate to enjoin BWC from disbursing those funds which it [had] identified by Dr. Lundeen's social security number only." (Doc. # 18 at 4.) On July 18, 2008, BWC informed the court that it was holding $121.38 under Lundeen Medical

2

Group, no money under the other two entities, and $11,828.01 under Dr. Lundeen's personal social security number. On July 21, 2008, BWC released the $11,828.01.

In late September 2008, Asst. A.G. Lazich notified Dr. Lundeen that BWC was holding $242.76 under Lundeen Medical Group and $60.69 under the Debtor Entity, which Dr. Lundeen contends was not covered by the preliminary injunction. On October 30, 2008, Asst. A.G. Lazich emailed Dr. Lundeen, suggesting that BWC would continue to hold the funds of any entity affiliated with Dr. Lundeen except those identified only by his personal social security number. Dr. Lundeen filed this civil rights action on November 21, 2008, seeking injunctive relief and damages against Asst. A.G. Lazich and Judge Morgenstern-Clarren for allegedly depriving him of rights guaranteed by the Fourth Amendment to the United States Constitution by unlawfully conspiring with others to search and seize his BWC funds and unlawfully seizing those funds for the seventeen days between the issuance of the vacating order and the issuance of the preliminary injunction.

## II. Standards of Review

Judge Morgenstern-Clarren moves to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must construe the complaint in favor of Dr. Lundeen, accept the factual allegations contained in his complaint as true, and determine whether his factual allegations present plausible claims. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *Brogan v. The Hartford Life Ins. Co.*, No. C2-08-765, 2009 WL 330296, at *1 (S.D. Ohio Feb. 9, 2009). " '[F]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true.' " *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, U.S. at 555).

Dr. Lundeen is proceeding without the assistance of counsel. "The pleadings of pro se petitioners are held to less stringent standards than those prepared by attorneys, and are liberally construed when determining whether they fail to state a claim upon which relief can be granted." *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "A court should make a reasonable attempt to read the pleadings to state a valid claim on which the plaintiff could prevail, despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 746 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). However, the Court will not assume "the role of advocate for the pro se litigant." *Id.*

### III. Analysis

Dr. Lundeen claims that Judge Morgenstern-Clarren both conspired with Asst. A.G. Lazich and others to unlawfully search and seize his BWC funds and unlawfully seized those funds. Dr. Lundeen rests his claims against Judge Morgenstern-Clarren on 42 U.S.C. § 1983, which requires a plaintiff to show that he or she was deprived of a right secured by the Constitution or laws of the United States by an individual acting under color of *state* law. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir. 2007). However, even accepting Dr. Lundeen's allegations as true, he only asserts that Judge Morgenstern-Clarren acted under color of *federal* law as a judge of the United States Bankruptcy Court for the Northern District of Ohio. Therefore, Dr. Lundeen cannot rest his claim against her on Section 1983.

4

That being said, the Supreme Court recognizes a similar, implied right of action available to individuals allegedly deprived of their Fourth Amendment rights by those acting under color of federal law. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See also*, *King v. Fuller*, No. 4:08-CV-36, 2008 WL 4613076, at *2 (E.D. Tenn. Oct. 15, 2008) ("[A] *Bivens* action is analogous to an action under § 1983 and . . . the decisional law developed under § 1983 generally applies to *Bivens*-type actions.") (citing *Carlson v. Green*, 466 U.S. 14, 21–22 (1980) and *Butz v. Economou*, 438 U.S. 478, 504 (1978)). When a plaintiff mislabels *Bivens* claims as arising under Section 1983, the Sixth Circuit does not require trial courts to cure the defective complaint. *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). "Assuming arguendo, that [the Sixth Circuit] were to place such a requirement on the district courts, [Dr. Lundeen's] claim nevertheless fails." *Id.* at 825. *See also*, *Massey v. Stosberg*, No. Civ.A. 03-CV-147, 2004 WL 3389369, at *1 n.1 (W.D. Ken. Feb. 25, 2004) (converting pro se plaintiffs' Section 1983 suit against a bankruptcy judge into a *Bivens* action before dismissing action for failure to state a claim). In the instant action, like in *Mitchell* and *Massey*, Dr. Lundeen's claims against Judge Morgenstern-Clarren fail because she did not act under color of state law and, alternatively, neither of Dr. Lundeen's Section 1983 claims against the judge states a claim upon which relief can be granted.

First, to support his conspiracy claim, Dr. Lundeen alleges that Defendants knew his BWC funds were frozen despite the vacating order "apparently through ex parte communications and/or apparent participation in the searching of [his BWC] records." (Doc. # 2 at 16.) However, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state a claim."

5

*Center for Bio-Ethical Reform v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). Dr. Lundeen's bald conspiracy allegation falls short of stating a plausible claim. *See Twombly*, 550 U.S. at 555 (allegations must rise above the "speculative level").

Additionally, even if Dr. Lundeen pled sufficient facts to support a conspiracy claim, that allegation along with the remaining Fourth Amendment claim would nevertheless fail under the doctrine of judicial immunity. "It is well established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967)). This is true even when a plaintiff alleges that a judge performed his or her judicial function maliciously, corruptly, or in bad faith. *Id.* Additionally, when judicial immunity applies, the immunity shields a judge not only from damages, but from suit as well. *Archie v. Lanier*, 95 F.3d 438, 440 (6th Cir. 1996) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curium)).

"A judge, however, will not be immune from suit seeking monetary damages in two circumstances: (1) where the judge acts in a non-judicial capacity; or (2) where the judge acts in the complete absence of jurisdiction." *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir. 1997) (citing *Mireles*, 502 U.S. at 11–12). *See also Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of his immunity because the action he took was in error . . . or was in excess of his authority."). The Sixth Circuit recognizes that judicial immunity "operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (holding that judicial immunity shielded a school hearing officer from Section 1983 liability in his individual capacity). Therefore, the Court must examine Dr. Lundeen's claims to determine whether they allege that

Judge Morgenstern-Clarren acted either outside her judicial capacity or in the complete absence of jurisdiction.

    1. *"Non-judicial acts" exception.*

The "nature and function of the act, not the act itself" determines whether an individual acted in his or her judicial capacity. *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997) (citing *Mireles*, 502 U.S. at 13). This inquiry is twofold. *Id.* at 1441. First, a court must assess whether the nature of the act was "a function normally performed by a judge." *Id.* (quoting *Stump*, 435 U.S. at 362). Second, a court must determine "whether the parties dealt with the judge in his or her judicial capacity." *Id.* (citing *Stump*, 435 U.S. at 362).

Dr. Lundeen points to several specific facts to support his allegations. On June 17, 2008, Judge Morgenstern-Clarren granted a TRO to freeze BWC accounts and then vacated that order on June 27, 2008. The funds remained frozen by BWC through the July 8, 2008, preliminary injunction hearing. On July 14, 2008, Judge Morgenstern-Clarren odered BWC to continue holding the funds, except those held under Dr. Lundeen's personal social security number. The latter set of funds was released on July 21, 2008. These acts are without question all "functions normally performed by a judge."

Further, in each instance, Dr. Lundeen dealt with Judge Morgenstern-Clarren in her judicial capacity by appearing before her, testifying in her court, and filing pleadings for her consideration. Although Dr. Lundeen theorizes ill-motives on the part of the judge, none rise above speculation and none, even if true, are relevant. *Brookings*, 389 F.3d at 617 (holding that allegations of malice, corruption, or bad faith do not negate judicial immunity). Judge Morgenstern-Clarren acted within her judicial capacity when she granted the TRO freezing the

7

funds and when she vacated that order, even if she knew the accounts would remain frozen. Also, Dr. Lundeen dealt with her exclusively within her role as a judge.

Thus, the Court concludes that Judge Morgenstern-Clarren acted within her judicial capacity. Dr. Lundeen is therefore not entitled to the non-judicial acts exception to the doctrine of judicial immunity.

2. *"Clear absence of all jurisdiction" exception.*

"A judge acts in the clear absence of all jurisdiction only when the matter upon which he acts is clearly outside the subject matter of the court over which he presides." *Johnson*, 125 F.3d at 334. When deciding whether to extend judicial immunity, the Court examines the scope of subject matter broadly. *See Stump*, 435 U.S. at 356. Dr. Lundeen does not provide any basis for the Court to find that Judge Morgenstern-Clarren clearly acted without jurisdiction of the federal bankruptcy court. Although Dr. Lundeen suggests that the Debtor Entity's underlying case should have been considered in state court, he does not argue that Judge Morgenstern-Clarren lacked the authority to consider motions, conduct hearings, and issue and vacate orders relating to the freezing of funds affiliated with an entity in bankruptcy.

Consequently, the Court concludes that Judge Morgenstern-Clarren acted within the jurisdiction of the bankruptcy court. Therefore, the clear absence of all jurisdiction exception to the doctrine of judicial immunity is not applicable here.

Dr. Lundeen has also requested oral argument on this motion.

> [I]f oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel may apply to the Court for argument. This may be done by including the phrase "ORAL ARGUMENT REQUESTED" (or its equivalent) on the caption of the motion or on a memorandum. The ground(s) for any such

8

request shall be succinctly explained. If the Court determines argument or a conference would be helpful, the Court will notify all parties.

*See* S.D. Ohio Civ. R. 7.1(b)(2).

The Court concludes that oral argument is not essential to the fair resolution of this case.

### IV.  Conclusion

Based on the foregoing, the Court **GRANTS** Judge Morgenstern-Clarren's motion to dismiss.  (Doc. # 18.)

**IT IS SO ORDERED**.

                                         **/s/ Gregory L. Frost**
                                         **GREGORY L. FROST**
                                         **UNITED STATES DISTRICT JUDGE**